UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MYNOR LEMUS-OLYVA,

      Petitioner,

    v.

BRIAN ENGLISH, Warden of Miami
Correctional Facility,

      Respondent.

CAUSE NO. 3:26cv308 DRL-SJF

<u>OPINION AND ORDER</u>

Immigration detainee Mynor Lemus-Olyva, a litigant without counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging he is unlawfully confined in violation of the laws or Constitution of the United States.

Mr. Lemus-Olyva is citizen of Guatemala who entered the United States without inspection. He claims he has been here since 2002. Immigration records reflect that he came to the attention of immigration officials in 2020 after he was arrested (and later convicted) in Allen County, Indiana, for driving under the influence of alcohol. He was detained by United States Immigration and Customs Enforcement (ICE) agents, served with a notice to appear in immigration court, and then released on bond. In 2023, he was arrested again and subsequently convicted of driving under the influence of alcohol. In February 2025, he was arrested on a sexual assault charge in Ohio, which remains pending as far as the record reveals. He was later transferred to the Allen County jail in connection with an alleged probation violation.

In August 2025, Mr. Lemus-Olyva was taken into custody by ICE agents in Indiana pursuant to an administrative warrant, and was then transferred to Miami Correctional Facility, where he is being held pending the conclusion of his removal proceedings. An immigration judge had ordered him removed to Guatemala, but the Board of Immigration Appeals (BIA) remanded for further proceedings. The immigration judge ordered him removed again on remand, and his appeal to the BIA remains pending. He argues that he has not been given an opportunity for release on bond, and that his detention violates applicable statutes and Fifth Amendment due process. He seeks immediate release from custody or a custody redetermination hearing before an immigration judge.

In an order to show cause, the court directed the Warden to answer the petition in light of *De Jesús Aguilar v. English*, No. 3:25cv898 DRL-SJF, 2025 WL 3280219, 8 (N.D. Ind. Nov. 25, 2025), *appeal docketed*, No. 26-1145 (7th Cir. Jan. 26, 2026), which joined a large majority of other courts in concluding that § 1225(b)(2) does not apply to noncitizens when they are not "seeking admission" within the statute's meaning. *See also Singh v. English*, No. 3:25cv962, 2025 WL 3713715, 5 (N.D. Ind. Dec. 23, 2025) ("In short, under § 1225(b)(2), an alien must be an 'applicant for admission,' and the alien must be 'seeking admission,' and an examining immigration officer must determine that this alien 'is not clearly and beyond a doubt entitled to be admitted' for mandatory detention to occur under this subsection."). The Warden was instructed to address why this case differs from *Aguilar*, why the court should examine subject matter jurisdiction differently, and whether there is cause to address the outcome differently. That response was filed, and Mr. Lemus-Olyva filed a reply.

2

The Warden (through his federal counsel) repeats his arguments from *Aguilar* and other recent cases that the court lacks jurisdiction over the petition and that Mr. Lemus-Olyva's detention is authorized by § 1225(b)(2). These arguments were rejected in *Aguliar* and *Singh* (and other decisions). *See Singh v. English*, No. 3:25cv962, 2025 WL 3713715 (N.D. Ind. Dec. 23, 2025) (Leichty, J.); *see also Mejia Diaz v. Noem*, No. 3:25cv960, 2025 WL 3640419 (N.D. Ind. Dec. 16, 2025) (Brisco, J.). The court continues to be of the view that jurisdiction is secure insofar as this opinion goes, and that § 1225(b)(2) cannot reasonably be interpreted in the manner urged by the government.

Notably, the court of appeals recently found in deciding a motion for a stay pending appeal that the government was not likely to succeed on the merits of its argument that the mandatory detention provision contained in § 1225(b)(2) applies to individuals who are arrested in the interior of the United States, *see Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025), and thereafter reached an opinion on the merits that echoed what this court has done, though one judge concurred in the judgment and not in each part of the opinion's rationale and one judge dissented such that at times it reads as 2-1 decision and at times, in effect, as a 1-1-1 decision, *see Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 2026 WL 1223250 (7th Cir. May 5, 2026). The Second Circuit, Sixth Circuit, and Eleventh Circuit reached a conclusion on the merits similar to *Aguilar* and *Singh*. The court also read the split decisions from the Fifth Circuit and Eighth Circuit. These opinions, together with others, illustrate just how complicated this patchwork of statutes is, but the court remains persuaded in its current course under *Aguilar* and *Singh*, not least in light of *Castañon-Nava*.

The question remains whether there is anything unique here that would warrant a different conclusion than that reached in both *Aguilar* and *Singh*. The court can find no such reason. Whether Mr. Lemus-Olyva is an "applicant for admission" within the meaning of § 1225(b)(2), he cannot be said to be "seeking admission" for the same reasons the court articulated in both *Aguilar* and *Singh*.

That leads the court to 8 U.S.C. § 1226(a), the "default rule" for detention of noncitizens who are "already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). ). "On a warrant issued by the Attorney General, an alien may be arrested and detained" while removal proceedings are pending, and the Attorney General "(1) may continue to detain the [noncitizen]; and (2) may release the [noncitizen] on (A) bond . . . or (B) conditional parole" until removal proceedings conclude. 8 U.S.C. § 1226(a). The court, as it always does, begins with the statute's plain language. It is permissive, not mandatory, and it affords an election (insofar as the limitations in § 1226(c) do not apply of course).[1]

Immigration officials issued a warrant for Mr. Lemus-Olyva's arrest [7-2]. By statute, a noncitizen detained pursuant to a warrant may be released by the Attorney General (subject to certain statutory limitations that no one argues apply here), or he may be detained pending a decision on whether he will be removed from the United States. *See* 8 U.S.C.

---

[1] The Warden does not argue that Mr. Lemus-Olyva's criminal history makes him ineligible for bond under 8 U.S.C. § 1226(c), and it would be inappropriate for the court, as a neutral arbiter, to construct arguments for the parties. *See Clark v. Sweeney*, 607 U.S. 7, 9 (2025) (party presentation rule). Likewise, the parties do not argue that Mr. Lemus-Olyva's release on bond in 2020 (prior to his 2023 conviction and 2025 arrest on sexual assault charges) has any impact on his current detention. By regulation, the Attorney General has discretion to revoke a prior bond and re-detain a noncitizen who is in removal proceedings. 8 CFR § 236.1(c)(9); *see also Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981) (noncitizen released on bond may be re-detained where there is a "change of circumstance").

§§ 1226(a), (c). Our high court likewise has recognized the permissive nature of this language. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 526-27 (2021); *Jennings*, 583 U.S. at 306.

The Attorney General has delegated this discretion by regulation—first, to specified immigration officers who may "release an alien not described in [§ 1226(c)(1) (regarding criminal aliens)], under [bond or conditional parole]; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8). That is called an initial custody determination. After that initial custody determination, a noncitizen may apply to an immigration judge for a custody redetermination, and the immigration judge is authorized to exercise the authority in § 1226 "to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released." 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1); *see also* 8 C.F.R. § 1003.19 (detailing procedures for custody or bond redeterminations by an immigration judge). When a noncitizen files this motion, an immigration judge, under immigration court rules, must "in general" schedule a "hearing for the earliest possible date," though in "limited circumstances" the immigration judge may rule on a bond redetermination request without a hearing. Immig. Ct. Practice Manual § 9.3(d). A noncitizen may appeal a decision relating to bond and custody determinations to the Board of Immigration Appeals. 8 C.F.R. §§ 236.1(d)(3), 1236.1(d)(3).

The court has oft said, and perhaps by now has said in ruling on nearly every habeas corpus petition of many immigration matters that have come before it, that the parties, both noncitizens and the government alike, must comply with our laws as they are written and

as they must work within constitutional demands. *See, e.g., Zadvydas*, 533 U.S. at 701; *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). The government has predetermined the procedures that apply to noncitizens who are arrested and detained under § 1226(a), and due process requires merely that they be fairly given, not taken away. *See Accardi*, 347 U.S. at 266-68; *see, e.g., Jideonwo v. I.N.S.*, 224 F.3d 692, 697 (7th Cir. 2000). The seeds of this understanding rest "in the long-settled principle that the rules promulgated by a federal agency, which regulate the rights and interests of others, are controlling upon the agency." *Montilla v. I.N.S.*, 926 F.2d 162, 166 (2d Cir. 1991).

Mr. Lemus-Olyva is entitled only to process consistent with his classification under § 1226(a). The government has decided what that process is by regulation, and he gives no reason to believe that this process is undue or otherwise insufficient. Absent something more, the court will order no more and no less than what is expected of immigration officials by law.[2] *See Accardi*, 347 U.S. at 268; *see also United States v. Nixon*, 418 U.S. 683, 696 (1974) ("So long as this regulation [delegating discretion to a Special Prosecutor] remains in force the Executive Branch is bound by it, and indeed the United States as the sovereign composed of the three branches is bound to respect and to enforce it.").

The court has the same expectation of compliance for the petitioner—follow the rules. It appears Mr. Lemus-Olyva did not seek a custody redetermination before an immigration judge before filing his petition. When "exhaustion of administrative remedies is not

---

[2] Mr. Lemus-Olyva argues that his detention exceeds what is reasonable, invoking the United States Supreme Court's holding in *Zadvydas v. Davis*, 533 U.S. 678 (2001), which imposed time limitations on post-removal-period detention to ensure that such detention does not become indefinite. However, this holding does not apply to him, because he is not being held in post-removal-period detention. Instead, his removal proceedings are still ongoing.

statutorily mandated," "sound judicial discretion governs" whether it must be done. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (citation omitted). A court may require administrative exhaustion in § 2241 cases challenging a noncitizen's detention as a matter of judicial economy and administrative comity. *Id.* at 1017. A petitioner "with a statutory argument that has a reasonable prospect of affording him relief may not skip the administrative process and go straight to federal court," *id.* at 1018, though "individual interests demand that exhaustion be excused when . . . appealing through the administrative process would be futile because the agency . . . has predetermined the issue," *id.* at 1016.

Perhaps he thought it futile, because an immigration judge might follow *In re Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), but thus far in this circuit that guidance has been found erroneous such that, as the days pass, that futility seems harder to presume. At the same time, after a split of circuits, maybe only a United States Supreme Court decision will make it so. Based on the early stages of now many § 2241 petitions and an unbroken record of denials of custody redeterminations (even when noncitizens have been arrested pursuant to a warrant like he was) because immigration officials believe they must be classified under § 1225(b)(2), the court finds there was no reasonable prospect of success, absent a determination by the court that he must be classified under § 1226(a), not § 1225(b)(2).

Recent proceedings in a case out of California suggest that *Hurtado* remains a barrier to relief for petitioners like Mr. Lemus-Olyva. In February 2026, a judge in the Central District of California issued an order vacating *Hurtado* on behalf of a nationwide class of individuals who were arrested by ICE within the interior of the United States and denied an opportunity for bond. *See Bautista v. Santacruz*, No. 5:25cv01873, 2026 WL 468284 (C.D.

Cal. Feb. 18, 2026), *appeal docketed*, *In re Lazaro Maldonado Bautista*, No. 26-1044 (9th Cir. Feb. 23, 2026). The government has appealed, and, at the government's request, the Ninth Circuit recently stayed the court's class certification order and final judgment "insofar as they extend beyond the Central District of California," and stayed the court's post-judgment order vacating *Hurtado* in its entirety. *Maldonado Bautista*, No. 26-1044 (9th Cir. order dated Mar. 31, 2026). The district judge's decision vacating *Hurtado* is thus unlikely to change the outcome of a custody redetermination motion filed by an individual like Mr. Lemus-Olyva, who is outside of California. These recent proceedings also indicate that the government remains committed to its interpretation of § 1225(b)(2) notwithstanding the prior rulings of this court and others.

This doesn't affect the court's jurisdiction, but it does affect Mr. Lemus-Olyva's relief. The appropriate remedy is to put the ball in his court to file a motion for custody redetermination in his pending removal proceedings, with the benefit of a finding from the court that he is not categorically ineligible for bond under 8 U.S.C. § 1225(b)(2). The court likewise must deny immediate release because Mr. Lemus-Olyva has not met his burden of showing his current detention unlawful under § 1226(a).

For these reasons, the court:

(1) DENIES the petition [ECF 1], except to FIND that Mynor Lemus-Olyva must be classified under 8 U.S.C. § 1226(a), including for purposes of any custody redetermination; and

(2) DIRECTS the clerk to enter final judgment and to close this case.

SO ORDERED.

May 13, 2026                                          s/ Damon R. Leichty
                                                           Judge, United States District Court